UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES DITULLIO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 16-2775 |
| v. | : | OPINION |
| BOROUGH OF BERLIN and PATROLMAN RYAN HERON, | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for summary judgment [24] pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the submissions and decides the matter based on the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here, the motion will be granted.

## **Jurisdiction**

This is a civil action over which the district court has original jurisdiction based on a question "arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. Plaintiff asserts a violation of his civil rights pursuant to 42 U.S.C. § 1983.

## **Background**

On May 18, 2014 at the Berlin Farmers Market in Berlin, New Jersey, Plaintiff James DiTullio interjected himself into a situation where police officers were questioning another patron attempting to sell puppies at the

market without a permit. An altercation between the police officers and Plaintiff ensued, resulting in Plaintiff's arrest.

In this case, Plaintiff has asserted claims against Defendant Heron under 42 U.S.C. § 1983 for false arrest/imprisonment, excessive force, conspiracy, and bystander liability as well as a Monell claim against the municipality. In briefing the opposition to the motion before the Court, Plaintiff has conceded the Monell claim.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## Discussion

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120

(1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the

Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

In this case, Plaintiff was indicted and charged with obstructing the administration of law in violation of N.J. Stat. Ann. § 2C:29-1A; assault on a police officer in violation of N.J. Stat. Ann. § 2C:12-1B(5)(A); resisting arrest in violation of N.J. Stat. Ann. § 2C:29-2A(3)(A); and simple assault in violation of N.J. Stat. Ann. § 2C:12-1a. He completed New Jersey's Pre-Trial Intervention Program (PTI) in October of 2015 and, as a result, the charges against him were dismissed. However, this does not constitute a favorable termination; for Heck purposes, it is akin to a conviction. See Fernandez v. City of Elizabeth, 468 F. App'x 150, 154 (3d Cir. 2012); Bustamante v. Borough of Paramus, 994 A.2d 573, 582 (N.J. Super. Ct. App. Div. 2010).

Plaintiff's claims of false arrest and excessive force are barred by Heck because a favorable outcome on those claims here would be inconsistent with the admissions Plaintiff made in State court in order to enter into the PTI program. By pleading guilty to resisting arrest, Plaintiff acknowledged that Defendants did not use unlawful force in effectuating his arrest, see Bustamante, 994 A.2d at 585-86, and there are no allegations of force subsequent to the arrest. Accordingly, a judgment in favor of the Plaintiff on his claims here would necessarily imply the invalidity of his underlying criminal "conviction" in State court.

Additionally, the doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 5623 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir, 2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Id. (internal citations omitted).

Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341. See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him. Graham v. Conner, 490 U.S. 386, 397 (1989). While the question of reasonableness is objective, the court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id. In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634

(3d Cir. 1995) (quoting Graham, 490 U.S. at 396). See also Graham, 490 U.S. at 396-97 (analyzing reasonableness of use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

A § 1983 claim for the failure to stop the use of excessive force rises to the level of a constitutional violation if excessive force was used and defendants had a reasonable opportunity to prevent the use of excessive force. See, e.g., Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).

In this case, Defendant Heron enjoys qualified immunity as the undisputed facts support the arresting officer's probable cause to arrest the Plaintiff. In addition, because the Court finds no basis for constitutional violations, there can be no conspiracy or bystander liability.

## Conclusion

For these reasons, Defendants' motion for summary judgment [24] pursuant to Federal Rule of Civil Procedure 56 will be granted.

An appropriate Order will accompany this Opinion.


Dated: March 18, 2019              s/ Joseph H. Rodriguez
                                   JOSEPH H. RODRIGUEZ
                                        U.S.D.J.